### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------x
JESUS RUIZ,                    :
          Plaintiff,           :
                               :
v.                             :    CIV. NO. 3:15 CV 253 (AWT)
                               :
CITY OF BRIDGEPORT, THOMAS     :
AUSTIN and STEVE LOUGAL,       :
                               :
          Defendants.          :
------------------------------x
```

### RULING ON PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

On June 7, 2016, the court having received an email from counsel reporting settlement, administratively closed the case without prejudice to reopening on or before July 7, 2016.  On June 28, 2016, the plaintiff, through new counsel,  filed a motion to reopen the case, claiming the plaintiff had not agreed to settlement.  Also on June 28, 2016, the plaintiff filed a motion to amend the complaint.  On July 11, 2016, the defendants filed an objection to the plaintiff's motion to reopen the case, along with their own motion to enforce the settlement agreement.

The court granted the motion to reopen the case on August 17, 2016, having found that the plaintiff had timely filed his motion.  The court held a hearing on the Plaintiff's Motion to Amend the Complaint and the Defendants' Motion to Enforce

Settlement Agreement on October 18, 2016, during which the court heard testimony from former counsel for the plaintiff, Attorney John Bochanis; counsel for the defendants, Attorney John Mitola; and the plaintiff, Jesus Ruiz.  After the hearing, the court granted the parties leave to file supplemental briefing.  For the reasons set forth below, the defendants' motion to enforce the settlement agreement is being denied and the plaintiff's motion to amend the complaint is being granted.

## I.    <u>FACTUAL BACKGROUND</u>

The plaintiff, Jesus Ruiz, was employed by the City of Bridgeport as a kennel worker for approximately seven years before being promoted to an Animal Control Officer position. Once he was in the Animal Control Officer position, Ruiz's supervisor was Lieutenant Steven Lougal.  Believing that Lieutenant Lougal was discriminating against him based on race, Ruiz filed a discrimination claim with the Connecticut Commission on Human Rights and Opportunities (CHRO).  Although the exact date of the CHRO complaint is unclear, it was filed prior to October 2014.

On October 3, 2014, while driving a city vehicle during his shift as an Animal Control Officer, Ruiz was involved in a motor vehicle accident.  He filed a workers' compensation claim pursuant to the Connecticut Workers' Compensation Act.  The City

of Bridgeport placed Ruiz on paid administrative leave while it investigated the accident.  To date, the City has not formally disciplined Ruiz nor charged him with any misconduct related to the accident, but Ruiz has not been permitted to return to work.

Ruiz commenced this action on January 23, 2015, in Connecticut Superior Court, claiming state and federal civil rights violations, discrimination, and retaliation related to the accident, the subsequent investigation, and his workers' compensation claim.  The case was removed to federal court, and the plaintiff moved to remand the case back to state court.  The granted the motion to remand as to the Sixth Count and denied it as to the First through Fifth Counts.

On May 3, 2016, the defendants had arranged to depose Ruiz. The precise details are unclear, but Ruiz arrived at the office of the defendants' counsel in City Hall that morning with his then counsel, Attorney Bochanis.  At that time, Ruiz stayed in the reception area while Attorney Bochanis met with Attorney Mitola and Thomas Austin in a conference room to discuss settlement.  Attorney Bochanis came out to the reception area at least twice to discuss the settlement terms with Ruiz.  Ruiz testified that at one point, Attorney Bochanis "told me that they wanted to give me a 30-day suspension and I told him I'm not taking no 30-day suspension."  Hr'g Tr. at 108.  Ruiz continued, "So then when he came again he says, okay, they'll

-3-

give you two weeks suspension.  I said okay, two weeks
suspension with my position.  He wanted me to go to kennels.  I
said I'm not taking the kennels. . . . I told him I'm staying
with my position.  I want my position.  I want to go back.  And
no matter what happens, I'm not dropping the charges."  Id.
When asked whether he knew Attorney Bochanis had reached an
agreement with the defendants, Ruiz testified, "No, I didn't
know that they settled."  Hr'g Tr. at 110.

Once the May 15, 2016 discovery deadline had passed, the
court issued an order on June 6, 2017, referring the case to a
parajudicial officer for a status conference.  Upon receiving
notice of the order, Attorney Mitola contacted the court via
email, with a copy to Attorney Bochanis, stating that the case
had settled.  The Clerk's Office was directed to close the case.

Meanwhile, after the meeting on May 3, 2016, Ruiz made
several attempts to call Attorney Bochanis to discuss his case,
but "never got a call back from Mr. Bochanis."  Hr'g Tr. at 111.
Only after Ruiz obtained assistance from Attorney Miller, his
present counsel, to view the docket online did Ruiz learn that
his case had been reported settled and the court had closed the
case.  See Hr'g Tr. at 112-13.  Ruiz testified that when was
finally able to speak to Attorney Bochanis, "I asked him, John,
by any chance did you settle the case?  And he told me yes, I
did.  I said how did you settle the case, John?  I never settled

the case.  I never gave permission.  I told you from the
beginning I wanted my position back, two weeks suspension with
my position back.  And I was never going to settle with what
they wanted.  Well, I settled and you have to come down and sign
papers [sic]." [1]  Hr'g Tr. at 112.

Ruiz engaged his current counsel, Attorney Miller, who
filed the motion to reopen the case and the motion to amend the
complaint on June 28, 2016.  Attorney Bochanis then filed a
motion to withdraw.

## II.  <u>LEGAL STANDARD</u>

"A settlement agreement is a contract that is interpreted
according to general principles of contract law.  Once entered
into, the contract is binding and conclusive." <u>Powell v.
Omnicom, BBDO/PHD</u>, 497 F.3d 124, 128 (2d Cir. 2007).  "The
lawyer-client relation [is] one of agent-principal," and as is
the case here, "[i]n a case arising under federal law, the scope
of an agent's authority is determined according to federal
precedent." <u>United States v. Int'l Bhd. Teamsters, Chauffeurs,
Warehousemen & Helpers of Am., AFL-CIO</u>, 986 F.2d 15, 20 (2d Cir.
1993) (citing <u>Fennell v. TLB Kent Co.</u>, 865 F.2d 498, 501 (2d
Cir. 1989).  Settlement agreements, particularly those to end

---

[1] While ambiguous in the transcript, it was clear during the hearing that Ruiz
was recounting both sides of his conversation with Attorney Bochanis, and
that the portion, "Well, I settled and you have to come down and sign the
papers," was meant to quote Attorney Bochanis.

-5-

litigation, "are strongly favored by courts and are not lightly cast aside."  Palmer v. Co. of Nassau, 977 F. Supp. 2d 161, 165-66 (E.D.N.Y. 2013) (citing Willgerodt v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997).  For this reason, "[t]he burden of proving that an attorney entered into a settlement agreement without authority is not insubstantial."  Int'l Bhd., 986 F.2d at 20 (citing, inter alia, Gilbert v. United States, 497 F.2d 1267, 1268-69 (2d Cir. 1973).

## III. **DISCUSSION**

The defendants contend that the meeting concluded with an oral agreement, approved by Ruiz, to settle all pending litigation and disputes between the parties, and all that was left to do was to formalize the settlement in writing.  The plaintiff contends that there was no oral agreement because Attorney Bochanis had neither actual nor apparent authority to settle on behalf of Ruiz.  Attorney Bochanis testified that the parties had agreed to a settlement in principle, but that several material details had not yet been agreed to.[2]   Although there is a question of fact as to whether Attorney Bochanis and the Attorney Mitola had a meeting of the minds sufficient to form a binding oral agreement, the court need not reach this

---

[2] See Hr'g Tr. 29 ("THE COURT: Did you report that there was a settlement contingent upon certain other items being resolved? THE WITNESS: Well, yes.").

issue because no such agreement could bind Ruiz unless Attorney Bochanis had the authority to settle the case.  The court finds that Attorney Bochanis had no such authority.

### A.   Attorney Bochanis Did Not Have Actual Authority

It is "undisputed [] that the decision to settle is the client's to make, not the attorney's." Fennell v. TLB Kent Co., 865 F.2d 498, 501 (2d Cir. 1989) (citing United States v. Beebe, 180 U.S. 343, 352 (1901)).  Because Ruiz was not in the room during the settlement negotiations, and "[t]he lawyer-client relation being one of agent-principal," Attorney Bochanis must have had either actual authority or apparent authority to settle the case on behalf of Ruiz. See Int'l Bhd., 986 F.2d at 20.

"[A]ctual authority 'may be inferred from words or conduct which the principal has reason to know indicates to the agent that he is to do the act.'" Int'l Bhd., 986 F.2d at 20 (quotation marks omitted) (quoting Edwards v. Born, Inc., 792 F.2d 387, 391 (3d Cir. 1986)).  Ruiz testified that he told Attorney Bochanis that he would not accept a settlement agreement placing Ruiz back in a kennel worker position, and that he communicated this to Attorney Bochanis "from the beginning until we walked out." Hr'g Tr. at 108.  Nothing about this conduct would indicate to a reasonable attorney that the attorney has the authority to agree to settlement terms placing his client in a kennel worker position.

-7-

This testimony by Ruiz is consistent with his demeanor and
testimony when describing the position of kennel worker compared
to that of animal control officer.  Ruiz appeared to take great
pride in his work as an animal control officer.  He mentioned
several times that his uniform as an animal control officer was
the same uniform that police officers wear.  See Hr'g Tr. at
100.  He had a police radio and police badges.  See Hr'g Tr. at
100-01.  When asked whether he was considered an officer in the
Bridgeport Police Department as an animal control officer, Ruiz
said, "Yes. I was considered an officer of the law."  Hr'g Tr.
at 101.  Ruiz described the kennel worker duties as including
cleaning up after the dogs and cats, feeding the animals, and
disinfecting the cages.  See Hr'g Tr. at 99.  There was also a
pay disparity between the two positions: $28,000 for a kennel
worker, compared to $36,000 for an animal control officer.  But
the pride Ruiz appeared to take in his work as an animal control
officer was what stood out.  This aligns perfectly with Ruiz's
testimony that he would refuse any settlement agreement that
would require him to return to work as a kennel worker, rather
than his most recent position as an animal control officer.

    The court acknowledges that Attorney Bochanis and Ruiz seem
to have had communication difficulties.  See, e.g., Hr'g Tr. at
106 (Ruiz testifying that Attorney Bochanis had told him the
purpose for being at city attorney's office on May 3 was for a

hearing, not for a deposition).  These communication difficulties may have led Attorney Bochanis to believe that he had actual authority to settle the case on behalf of Ruiz, dependent upon the salary of the position to which Ruiz would return.  See, e.g., Hr'g Tr. at 37 ("THE COURT: If Mr. Ruiz told you on that day that he was not willing to accept a demotion, would that have been inconsistent with your reporting to the defendants that there was agreement that he would come back as a kennel worker? Would that have been inconsistent with that? [ATTORNEY BOCHANIS]: I don't believe so because I think it depended upon what the pay grade and the salary amount was to be given to Mr. Ruiz."); Hr'g Tr. at 38 ("[ATTORNEY BOCHANIS]: Again, the word 'demotion,' I just don't recall the word 'demoted' coming up, but what was obviously of concern was the pay grade and the actual dollar amount."); Hr'g Tr. at 53-54 (Attorney Bochanis on whether Ruiz agreed to return to the kennel worker position: "As I indicated before, part of the discussions were what grade he was going to return to and what dollar amount.").

Attorney Bochanis's belief that he had authority to act, however, has no bearing on the analysis of actual authority. The standard is whether the principal had reason to know his words or conduct would indicate to the agent that the agent has authority to act.  See Int'l Bhd., 986 F.2d at 20; Edwards, 792

-9-

F.2d at 391.  Ruiz made very clear to the court that he valued
the job title and duties of the animal control officer position
at least as much as he did the salary of the position, and that
he had rejected any settlement requiring him to return to the
kennel worker position.  Neither the defendants nor Attorney
Bochanis point to any words or conduct on the part of Ruiz that
would cause Attorney Bochanis to reasonably believe he had the
authority agree to a settlement that would require Ruiz to
return to the kennel worker position.  They also do not show
that Ruiz had any reason to know his conduct would cause
Attorney Bochanis to believe as such.  Accordingly, the court
finds Ruiz had no reason to believe his words or actions would
indicate to Attorney Bochanis that Attorney Bochanis had
authority to bind Ruiz to return to the kennel worker position,
regardless of whatever communication difficulties the two may
have had.  Therefore, Attorney Bochanis did not have actual
authority.

   **B.  Attorney Bochanis Did Not Have Apparent Authority**

      "Apparent authority is the power held by an agent or other
actor to affect a principal's legal relations with third parties
when a third party reasonably believes the actor has authority
to act on behalf of the principal and that belief is traceable
to the principal's manifestations."  Restatement (Third) of
Agency § 2.03 (Am. Law Inst. 2003).  It is well established that

"customarily only the representation of the principal to the third party can create apparent authority, not the representation of the agent alone." Int'l Bhd., 986 F.2d at 20 (citing Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989); see also Restatement (Third) of Agency § 3.03 ("Apparent authority . . . is created by a person's manifestations that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor is to be authorized and the belief is traceable to the manifestation.").

Thus, any apparent authority must have been based on manifestations by Ruiz causing Attorney Mitola or his clients to reasonably believe Attorney Bochanis was authorized to act. The law is clear that Ruiz did not create apparent authority for Attorney Bochanis to settle the case "merely by retaining" him. Fennell, 865 F.2d at 502 (citing United States v. Beebe, 180 U.S. 343, 352 (1901). Additionally, that Ruiz "knew settlement was being discussed, did not ask his attorney[] not to discuss settlement, would have accepted [different] settlement [terms], and did not tell defendant[s'] counsel that the authority of [his] counsel was limited in any way, do not lead to a different outcome." Id.

Each of the three witnesses testified that Ruiz remained in the reception area for the entire duration of the May 3, 2016

-11-

settlement discussion between Attorney Bochanis and Attorney
Mitola.  See Hr'g Tr. at 10-11 (Attorney Bochanis testifying he
believed Ruiz came in to the conference room to say goodbye, but
not before); Hr'g Tr. at 82-82 (Attorney Mitola testifying he,
Austin, and Attorney Bochanis left the conference room at the
conclusion of the meeting to shake Ruiz's hand); Hr'g Tr. at 107
(Ruiz, on whether he was ever in the conference room during
settlement discussions, "No, I was never called into that
conference room.").  The only contact between Ruiz and Attorney
Mitola or Austin was a handshake and exchange of pleasantries
just before Ruiz and Attorney Bochanis left for the day, during
which Ruiz did not say much, if anything at all.  Nothing about
Ruiz's conduct would lead a reasonable person to believe
Attorney Bochanis had the authority to agree to any specific
terms of a settlement agreement.

The defendants argue that Ruiz's inaction, or lack of
disaffirming words during this brief exchange, manifested to the
defendants that Attorney Bochanis had authority to act.  See
Defs.' Suppl. Br. at 16 (Doc. No. 54).  They correctly point out
that a principal's silence may create apparent authority.
Restatement (Third) of Agency § 1.03 cmt. b ("Silence may
constitute a manifestation when, in light of all the
circumstances, a reasonable person would express dissent to the
inference that other persons will draw from silence.").  The

-12-

defendants argue that under this rule, because Ruiz "never indicated to Attorney Mitola or anyone that there was no settlement, nor did he act in any manner which would indicate that he was not accepting the settlement described" in their brief, "it is clear that Attorney Bochanis had apparent authority."  Defs.' Suppl. Br. at 16-17, 18.

This argument rests on an assumption that Ruiz knew and agreed to the settlement terms simply because Attorney Bochanis left the conference room to confer with his client, and came back and reported that Ruiz had agreed.  But only the principal's own manifestations to the third party can create an agent's apparent authority.  See Int'l Bhd., 986 F.2d at 20; Fennel, 865 F.2d at 502.  Thus, in making this argument, the defendants improperly impute Attorney Bochanis's actions to Ruiz.

Had Ruiz, like Austin, been present during the settlement discussions, or had Attorney Mitola witnessed the terms being summarized for Ruiz, the defendants' argument that Ruiz's lack of objection manifested apparent authority would be much stronger.  Alternatively, had Attorney Mitola done and said something more specific than offering to shake hands, telling Ruiz, "I [am] glad we were able to resolve this matter," and wishing him luck -- for example, "It's good that you have agreed to go back to the kennels" -- Ruiz's silent handshake, without

-13-

protest or question, may have served to sufficiently manifest
Attorney Bochanis's apparent authority.  Under the actual
circumstances, however, it was reasonable for Ruiz to believe
that Attorney Mitola was merely being polite, and for Ruiz to
have "appeared satisfied" to be leaving City Hall because he had
sat alone in the reception area for the entire duration of the
discussions.  See Hr'g Tr. at 83 (Attorney Mitola testifying,
"He appeared satisfied that the case was sett[led].").
Particularly in light of the fact that Ruiz was not present for
the discussions, Attorney Mitola's comments were not
sufficiently specific for a reasonable person to realize that
the defendants were likely to draw such an inference from his
silence, and thus be put on notice of the need to express
dissent.  Therefore, Attorney Bochanis lacked apparent authority
to bind Mr. Ruiz to the terms of the settlement agreement.

       With neither actual authority nor apparent authority,
Attorney Bochanis was not authorized to settle the case, and
therefore, Ruiz cannot be bound by the agreement.


**IV.  <u>CONCLUSION</u>**

       For the foregoing reasons, the defendants' motion to
enforce the settlement agreement (Doc. No. 54) is hereby DENIED,
and the plaintiff's Motion to Amend Complaint (Doc. No. 32) is

hereby GRANTED.  The plaintiff shall file the amended complaint forthwith.

It is so ordered.

Signed this 31st day of March, 2017, at Hartford, Connecticut.

_____
                                    /s/ AWT

Alvin W. Thompson
United States District Judge